**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DENNIS E. ALLMAN,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:12-cv-549-Orl-36DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I.     BACKGROUND

### A.     Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on July 10, 2009, alleging an onset of disability on October 31, 2008, due to chronic obstructive pulmonary disease (COPD)

degenerative disc disease, esophageal disease, depression[1]. R. 59-63, 122-29. His application was denied initially and upon reconsideration. R. 67-72, 79-84. Plaintiff requested a hearing, which was held on September 13, 2010, before Administrative Law Judge Pamela Houston (hereinafter referred to as "ALJ"). R. 30-57. In a decision dated October 13, 2010, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 13-23. Plaintiff timely filed a Request for Review of the ALJ's decision which the Appeals Council denied on February 9, 2012. R. 120-21. Plaintiff filed this action for judicial review on April 11, 2012. Doc. 1.

### B.     Medical History and Findings Summary

At the time of the hearing, Plaintiff was 52 years of age, and had completed the ninth grade in 1973. R. 33, 159. Plaintiff had past relevant work was that of laborer/roofer requiring him to lift up to one hundred pounds. R. 34, 155, 161-62. According to the VE who testified at the hearing, Plaintiff's past relevant work consisted of an electrician helper, classified as heavy work, and a general construction worker, also heavy work. R. 58. He had no driver's license for 12 years because of a DUI. R. 36.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of degenerative disc disease with one herniated disc and pain in his legs and feet, COPD, and depression. R. 38, 40. In June 2008, a few months before Plaintiff's alleged onset date of October 31, 2008, Plaintiff was seen by Dr. Michael Broom complaining of "significant low back pain, right greater than left posterior thigh and calf down to the foot." R. 244. Dr. Broom documented central lumbar tenderness, and a reduced range of motion in the lumbar spine, and noted a lumbar MRI performed on December 14, 2007 revealed a central extruded disc at L5-S1, with a possible annular tear. R. 244, 258, 276, 308. Dr. Broom diagnosed "lumbar disc degeneration, stenosis with

---

[1]Plaintiff's date of last insured is June 30, 2013. R. 150.

radicular symptoms." R. 244. Lumbar epidural injections were administered three times in July 2008, but these only helped for "a short time." R. 244-45. Plaintiff reported he tried to work, but "if he works a couple of days, his pain becomes excruciating and then he has to take time off"; an updated lumbar MRI was ordered and Plaintiff was to return after that test to discuss surgical options. R. 245.

Plaintiff underwent another lumbar MRI on February 15, 2010 which showed disc degeneration with a mild to moderate diffuse annular disc bulge at the L3-4 level and borderline impingement for the intraspinal L4 nerve roots; disc degeneration at L4-5 level and a small central annular tear; and "marked disc space narrowing" at the L5-S1 level; a posterior vertebral osteophyte formation and a mild to moderate diffuse annular disc bulge; a superimposed left paracentral herniated disc with borderline impingement of the S1 nerve roots, left greater than right; and milder to moderate narrowing of the neural foramina within borderline impingement for the foraminal L5 nerve roots. R. 346-51, 386, 397. The following month, in March 2010, Plaintiff was evaluated by Dr. Jason Conaughty, a neurosurgeon who concluded that Plaintiff's "axial low back pain is without any clearcut radicular symptoms, and wakes him from sleep at night." R. 389-90. Dr. Conaughty opined that these "are all very poor prognostic indicators for surgical indications," and he recommended continued nonoperative treatment. R. 390. Plaintiff was then Plaintiff was seen at the Pain Management Center for continued complaints of back pain, as well as numbness in the lower extremities and he was diagnosed with Lumbar Facet Arthropathy; Displacement of lumbar Intervertebral Disc without Myelopathy; Lumbago; Sciatica; and Fibromyositis; he was prescribed a series of epidural steroid injections and pain medications. R. 324-28.

On September 24, 2009, Dr. Hopkins performed a consultative examination, and diagnosed Plaintiff with Lumbosacral pain, Disc Disease with Sciatica; Depression with Suicidal Ideation; High Blood Pressure; Numbness, sciatica into his legs; a history of a possible heart attack; Gastroesophaeal Reflux Disease; Recurring headaches, Migraines; and Chronic Cough, cause unknown. R. 283. Dr.

-3-

Austin performed a consultative mental evaluation of Plaintiff and concluded that Plaintiff's social functioning and his functional ability were moderately impaired based on his mood and symptoms of depression. R. 289. Plaintiff was also treated sporadically for pulmonary problems (R. 305-11), which testing showed returned to normal spirometry with medication. R. 312. Plaintiff was seen by Dr. Quililan on June 3, 2010 for continued management of his breathing issues, diverticulitis and back pain and Plaintiff was told to continue taking Advair for the COPD. R. 375.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered degenerative disc disease with one herniated disc and borderline neural impairment, chronic obstructive pulmonary disease (COPD), alcohol abuse, tobacco abuse, and depressive disorder, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13-14. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a range of light work. R. 15-20. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 21. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as small parts assembler, lunchroom or coffee shop attendant, and ticket taker. R. 22-23. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 23.

Plaintiff now asserts two points of error. First, he argues that the ALJ erred by finding he had the RFC to perform light work when the findings of the examining consultative physician, an opinion given great weight by the ALJ, would indicate a more restrictive residual functional capacity, and the ALJ failed to include any mental limitations despite the fact that she held Plaintiff would have moderate limitations in social functioning. Second, he claims the ALJ erred by relying on the

testimony of the Vocational Expert after posing a hypothetical question that failed to adequately reflect Plaintiff's limitations.  For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R.

§ 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III. ISSUES AND ANALYSIS

### A. Plaintiff's Mental Limitations and his Residual Functional Capacity

Plaintiff claims that the ALJ should not have found him able to perform a range of light work when she failed to include any mental limitations in Plaintiff's RFC despite the fact that she clearly held Plaintiff would have "moderate difficulties" with social functioning (R. 14). The Commissioner argues the ALJ properly evaluated the medical opinions as to Plaintiff's ability to do work activity.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctors' evaluations of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical

and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). As a general rule, a treating physician's opinion is normally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ must "state with particularity the weight she gave different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986) (requiring the ALJ to articulate his reasons for "giving no weight to the diagnoses accompanying the test results."). The Eleventh Circuit has clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan.24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms,

diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz*, 825 F.2d at 279. The Eleventh Circuit stated that " '[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178–79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

>In the instant case, the ALJ made the following residual functional capacity determination:
>
>After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could lift and carry ten pounds frequently and 20 pounds occasionally; he could stand, sit and walk six hours in an eight-hour workday; he could occasionally stoop, crouch, and climb ladders, ropes and scaffolds; and, he should avoid concentrated exposure to dusts, gases and poor ventilation.

R. 15. The ALJ found that Plaintiff was not capable of performing his past relevant work (R. 22), but he could perform other work in the national economy as a ticket taker, small parts assembler, and lunchroom or coffee ship attendant. R. 23-23, 53.

The Commissioner says nothing specifically about the ALJ's omission from Plaintiff's RFC of the moderate difficulties in social functioning that she found he had.

The Commissioner acknowledges Dr. Austin's opinion that Plaintiff had moderately impaired social function based on his reports of depression symptoms and limited interactions (R. 289) but argues that the ALJ properly also gave "significant weight" to the opinions of the non-examining state agency reviewing physicians who opined Plaintiff's mental impairments were not severe and caused no more than mild restriction of activities of daily living, and *mild* difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. R. 291-304, 352-365. If that is the case, under *Winschel*, then the ALJ is required to explain why she reached that conclusion.

Moreover, since the ALJ did adopt Dr. Austin's opinion of Plaintiff "moderate difficulties in social functioning" in the portion of her opinion discussing whether his mental impairments met listing-level severity (R. 14), she erred in failing to explain why she inconsistently chose not to include it in Plaintiff's RFC. The ALJ discussed the four functional areas summarized by application of the Psychiatric Review Technique, which are categories used to assist the ALJ in determining at Steps Two and Three which of the claimant's mental impairments are severe and from which the ALJ must determine the mental functional limitations on the claimant's ability to perform basic work activities. See 20 C.F.R. § 404.1520a(c); SSR 96–8p, 1996 WL 374184, *4 (S.S.A. July 2, 1996). Determination of the functional limitations is a "highly individualized" and fact specific determination. *Id.* Work related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b). The category of social functioning refers to the capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

Because the ALJ found Plaintiff had "moderate difficulties in social functioning" (R. 14), she erred by not including it in Plaintiff's RFC and in the hypothetical to the VE. *See, e.g., Berry v. Astrue*, 2011 WL 1135091, *7 ( M.D. Fla. Mar. 28, 2011) ("Under the guidance of *Winschel*, the ALJ is most certainly required to account for Plaintiff's moderate limitations in social functioning when stating a hypothetical question for the VE's input."); *Clements v. Astrue*, No. 3:08–cv–65- J-HTS, 2009 WL 260980, *6 (M.D. Fla. Feb. 4, 2009) (remanding, where the ALJ did not indicate whether medical evidence supported finding Plaintiff could perform basic work activities in spite of the moderate limitations in maintaining social functioning, activities of daily living and concentration, persistence and pace, and did not implicitly account for the limitation in his hypothetical to the

vocational expert). The ALJ stated that she included the degree of limitation in the PRT "paragraph B" mental function analysis in determining Plaintiff's RFC (R. 15); however, the ALJ failed to include Plaintiff's moderate limitations in social functioning. Accordingly, the ALJ's decision was not based on substantial evidence.

### B. Plaintiff's Mental Limitations in the Hypothetical to the VE

Plaintiff argues that the ALJ also erred by not including his moderate difficulties in social functioning as part of the hypothetical to the VE. Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ first asked the VE a hypothetical which did not include any mental limitations (R. 52) and found that with certain physical restrictions (only), Plaintiff would be able to perform other work in the economy. R. 53. The ALJ found at Step Five:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.11. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and *residual functional capacity*. The vocational expert testified that given all these factors the individual would be able to perform the requirements of representative occupations at the light exertional level, SVP 2, such as small parts assembler (DOT 739.687-030 with 998 jobs in the State of Florida and 40, 3339 nationally); lunchroom or coffee shop attendant (DOT 311.477-014 with 8,742 jobs in the State of Florida and 162,800 nationally); and ticket taker (DOT 344.687-010 with 1,008 jobs in the State of Florida and 23,256 nationally).

R. 22 (emphasis added).

At the hearing, the ALJ asked a second hypothetical of the VE about an individual who (in addition to physical restrictions) would need tasks to be completed where they were "simple, routine, and repetitive" and "interaction with third parties is that which is necessary to complete the task, otherwise brief or superficial . . . [m]eaning that, if you said a ticket taker, for instance, if the individual needs to say, hello, welcome to whatever or here's how much it is or here is your ticket, thank you, other than something just informational or necessary just to complete that task." R. 53-54.

The VE's answer to this second hypothetical was that the additional physical and mental limitations would preclude two categories of jobs completely and reduce the number of available jobs in the third category of ticket taker. R. 54. The ALJ did not comment in the decision about the second hypothetical that included mental limitations, or the VE's response to it[2]. Although the ALJ may rely on medical evidence which explicitly or implicitly accounts for a mental limitation in proposing a hypothetical question to the VE, *see Winschel*, 631 F.3d at 1180-81, the ALJ does not specifically discuss the medical evidence on which she relied. *Jarrett v. Comm'r of Soc. Sec.*, No. 10–13911, 422 F. App'x. 869, 872 (11th Cir. 2011) (finding a hypothetical – post-*Winschel* – restricting a claimant to "simple and routine tasks" adequately accounted for concentration, persistence, and pace difficulties where the medical evidence demonstrated the claimant retained the ability to perform such tasks despite moderate difficulties in concentration, persistence, and pace)[3].

The Commissioner contends that the ALJ accounted for Plaintiff's moderate limitations in social functioning in the hypothetical to the VE – citing R. 21 (Doc. 20 at 12) – however, it is clear

---

[2]The Commissioner attempts to argue that the ALJ did rely on the response to the second hypothetical (Doc. 20 at 12-13), but she could not have relied it since she found Plaintiff could perform all three occupations of small parts assembler, lunchroom or coffee shop attendant, and ticket taker. *See* R. 22. The Commissioner's attempts to argue that the error in finding Plaintiff could perform all three types of jobs was harmless is rejected for the reasons stated above.

[3]Although the Commissioner points out that the Eleventh Circuit has not applied *Winschel* to cases involving moderate limitations in social functioning, other district courts, cited *supra*, have and such an application is consistent with including all of Plaintiff's severe mental limitations in any hypothetical to the VE. *See Winschel*, 631 F.3d at 1180 n.1 (an ALJ must incorporate the results of the PRT into his findings and conclusions); *Moore v. Barnhart,* 405 F.3d 1208, 1213-14 (11th Cir. 2005) (holding ALJ erred in failing to analyze or document claimant's condition in the areas of social functioning and episodes of decompensation).

the ALJ did *not* rely on the VE's response to the second hypothetical, which was the only one that included mental limitations. Additionally, there was no "medical evidence which explicitly or implicitly accounted" for Plaintiff's moderate limitations in social functioning which equated to the ALJ's restriction in the hypothetical: "interaction with third parties is that which is necessary to complete the task, otherwise brief or superficial." R. 53-54.

As the Commissioner acknowledges, the ALJ did not rely on the state agency physicians' opinions[4], which found that although Plaintiff had depressive disorder his condition was not severe and that he had only mild difficulties in social functioning. *See* R. 301-30 ("findings suggest the [claimant] from a mental standpoint is capable of performing work tasks within his objectively physical capabilities"); R. 362-64 (The claimant's limitations are otherwise attributed primarily to a physical condition . . . while there may be some mental deficits present the claimant's impairment does not currently meet or equal a mental listing.").

The ALJ accurately summarized Dr. Austin's opinion, to which the ALJ assigned significant weight, as Plaintiff was limited by moderate impairments in social functioning. R. 19. Dr. Austin did not stipulate that although Plaintiff was moderately limited in social functioning he maintained the ability to "interact with third parties" to the extent "necessary to complete the task, otherwise brief or superficial," the way the ALJ qualified the limitation. *Cf. Clements v. Astrue*, No. 3:08–cv–65- J-HTS, 2009 WL 260980, *6 (M.D. Fla. Feb. 4, 2009) (remanding where the ALJ attempted to account for claimant's moderate limitations in maintaining social functioning, activities of daily living and concentration, persistence and pace by precluding her from holding occupations which "required more than occasional contact with the public").

The ALJ's omission of Plaintiff's moderate limitation in social functioning from the hypothetical to the VE was error, and as such, the ALJ's decision was not based on substantial

---

[4]Doc. 20 at 11-12.

evidence. *Nuno v. Astrue*, Case No. 6:06-cv-1906-ORL-KRS, 2008 WL 725603, *4 (M.D. Fla. Mar. 17, 2008) (remanding where the ALJ failed to include limitations arising from claimant's mental impairment in the hypothetical question posed to the VE).

### C.     Other Limitations in the Residual Functional Capacity and the Hypothetical

Plaintiff claims that the ALJ also should not have found him able to perform a range of light work when the findings of the examining consultative physician, an opinion given great weight by the ALJ, indicated a more restrictive RFC. The ALJ determined that Plaintiff had the RFC to perform light work except he could lift and carry ten pounds frequently and 20 pounds occasionally; he could stand, sit and walk six hours in an eight-hour workday; he could occasionally stoop, crouch, and climb ladders, ropes and scaffolds; and he should avoid concentrated exposure to dusts, gases and poor ventilation. R. 15.

Plaintiff argues that the ALJ erred by not including some of the limitations assigned by Dr. Hopkins in the residual functional capacity, such as his opinion that Plaintiff "would need periods of rest due to stiffness and pain in his back"; Plaintiff could stand and walk to four to six hours, not four to eight hours as noted by the ALJ; and that Plaintiff's lifting of thirty pounds occasionally, fifteen pounds frequently would be "done better in a sitting position." R. 283.  The ALJ omits these limitations from the RFC determination. R. 15, 18.  Plaintiff argues that the ALJ was required to explain how she reached her RFC assessment by explaining why she credited only part of the opinion of Dr. Hopkins, an opinion to which she assigned great weight. Plaintiff also argues that the error permeated the hypothetical to the VE, which included the defective RFC.

Although the Commissioner concedes Dr. Hopkins' opinion contained additional restrictions which the ALJ chose not include in the RFC, the Commissioner argues that the ALJ properly determined Plaintiff's RFC based "not on a single medical opinion but on the record as a whole." The Commissioner argues that the ALJ "may choose to adopt medical opinions when determining RFC,"

but "such statements are not necessary for an ALJ to determine RFC" and the ALJ "implicitly" included rest periods and lifting better from a sitting position. Doc. 20. While the ALJ is not required to adopt a medical opinion regarding a claimant's functionality wholesale, in this case, the ALJ specifically gave great weight to Dr. Hopkins' opinion and then omitted certain of the functional limitations he assigned without further comment.

On remand, the ALJ will either incorporate in the hypothetical the limitations included in Dr. Hopkins' opinion to which she gave great weight or explicitly state why they were not included, specifically the length and duration of rest breaks, lifting from the sitting position, and the amount of time Plaintiff could stand/walk.

## IV. CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 26, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record